Jeremy Kimmelman, Esq., (SBN 322958)
THE LAW OFFICES OF JAMES L. ARRASMITH
5150 Sunrise Boulevard, Suite G-1
Fair Oaks, CA 95628
Telephone: (916) 318-5858
E-mail: owls@jlegal.org

Attorney for Plaintiff
*SHEMECA CRADDOCK*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **SHEMECA CRADDOCK,** | **Case No.:** |
| *Plaintiff,* | **COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, RESTITUTION, AND INJUNCTIVE RELIEF** |
| v. | |
| **OPENAI OPCO, LLC, a Delaware limited liability company; UNKNOWN CORPORATE AFFILIATES AND SUBSIDIARIES OF OPENAI OPCO, LLC; and DOES 1 through 10, inclusive,** | 1. DECLARATORY RELIEF, 28 U.S.C. § 2201 |
| | 2. BREACH OF WRITTEN AND ELECTRONIC CONTRACT |
| *Defendants.* | 3. PROMISSORY ESTOPPEL |
| | 4. BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE |
| | 5. BREACH OF EXPRESS WARRANTY |
| | 6. STRICT PRODUCT LIABILITY (DESIGN DEFECT & FAILURE TO WARN) |
| | 7. NEGLIGENT MISREPRESENTATION |
| | 8. INTENTIONAL MISREPRESENTATION (FRAUD) |
| | 9. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ. |
| | 10. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500 |
| | 11. VIOLATION OF COLORADO CONSUMER PROTECTION ACT (DECEPTIVE TRADE PRACTICES), COLO. REV. STAT. §§ 6-1-101 et seq., including § 6-1-105 |

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

1

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

12. UNJUST ENRICHMENT / QUASI-
    CONTRACT (RESTITUTION)
13. COMMON LAW CONVERSION
14. BREACH OF THE IMPLIED COVENANT
    OF GOOD FAITH AND FAIR DEALING /
    UNCONSCIONABILITY

**DEMAND FOR JURY TRIAL, TO THE
EXTENT PERMITTED**

Plaintiff Shemeca Craddock alleges as follows:

## I.    INTRODUCTION

1.    This action arises from Defendant OpenAI OpCo, LLC's deployment, operation, and commercial monetization of ChatGPT, a public-facing artificial intelligence service/product that Defendant designed, controlled, marketed, and offered to consumers as an interactive assistant capable of producing authoritative answers, analysis, legal instruments, business guidance, contract language, intellectual-property protection, and financial-related research support.

2.    Plaintiff Shemeca Craddock used ChatGPT as a paid commercial assistant in connection with business development, bridal brand strategy, manufacturer sourcing, international confidentiality and non-circumvention documentation, the protection of original signature gown designs, marketing strategy, and cryptocurrency research, as well as for personal matters including personal financial planning, personal research, and day-to-day guidance. Defendant's false, misleading, and unauthorized representations affected Plaintiff in both her business and personal life. All electronic prompts, interactions, and legal demands issued by Plaintiff represent her personal, authorized legal records under applicable electronic transaction laws, and are not the automated products of third-party compilation.

3.    Plaintiff alleges that, during a critical July 16 to July 17, 2025, interaction, ChatGPT repeatedly made material representations concerning its truthfulness, strict confidentiality, legal authority, electronic contract formation,

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

enforceability, and OpenAI's explicit corporate responsibility for ChatGPT's output.

4. Plaintiff further alleges that ChatGPT generated multiple written instruments purporting to create a truth, confidentiality, accountability, and damages agreement, affixed or generated a unique signature identifier, represented that the agreement could bind OpenAI, represented that the agreement carried legal effect, and later contradicted those representations by stating that it lacked authority or that such instruments were merely symbolic or unenforceable.

5. Plaintiff does not allege merely that an artificial intelligence tool made an ordinary technical error. Plaintiff alleges that Defendant deployed a consumer-facing system that produced confident, legal, authority-bearing representations in a paid consumer relationship, while Defendant knew, or should have known, that ordinary users could reasonably treat such outputs as meaningful assurances when the system spoke in the first person, generated contract language, asserted legal authority, and induced reliance in commercially sensitive contexts.

6. Defendant later responded, through support channels, that ChatGPT output may be inaccurate, that support representatives lacked authority to process legal or financial demands, that ChatGPT was not a replacement for professional advice, and that OpenAI would not compensate Plaintiff for alleged harm arising from AI content. Those responses did not resolve the dispute. They instead confirmed the central contradiction in this case: Defendant commercially released and profited from a system capable of producing authoritative representations to consumers, then disclaimed responsibility after the consumer relied on those representations.

7. Plaintiff brings this action to obtain declaratory relief, damages, restitution, injunctive relief, and any other relief the Court deems just and proper. Plaintiff pleads claims in the alternative. To the extent Defendant disputes that ChatGPT's AI contract documents created a binding agreement, Plaintiff separately pleads reliance-based misrepresentation, promissory estoppel, unfair competition, product liability, and consumer-protection theories that do not depend exclusively on enforcement of the AI-generated contract instruments.

**THE LAW OFFICES OF JAMES L. ARRASMITH**
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

8.  Plaintiff brings this action not only to seek redress for the commercial, economic, and other losses alleged herein, but also to obtain relief addressing Defendant's alleged deployment of a highly commercialized, public-facing artificial intelligence platform that communicates in the first person, generates legal representations, contractual language, operational commitments, and other authoritative outputs upon which reasonable users may foreseeably rely. Plaintiff alleges that Defendant designed, marketed, and profited from a system capable of producing confident yet materially inaccurate or misleading information while attempting to avoid responsibility for those outputs through subsequent disclaimers and limitations of liability. Plaintiff further alleges that, absent appropriate judicial relief, the practices challenged herein present an ongoing risk of similar harm to other consumers and business users who may reasonably rely upon Defendant's paid platform in commercially significant contexts.

9.  Plaintiff further alleges that this action presents issues arising from the intersection of rapidly evolving artificial intelligence technology and longstanding principles of common law. Plaintiff alleges that Defendant has commercially deployed artificial intelligence systems capable of generating legal documents, conducting complex reasoning, facilitating electronic transactions, and inducing substantial consumer reliance in advance of comprehensive statutory regulation specifically governing such technologies. Plaintiff therefore alleges that, in the absence of directly applicable AI-specific legislation, the claims asserted herein are properly evaluated under established principles of contract law, product liability, consumer protection, electronic transaction law, and equity. Plaintiff further alleges that Defendant should not avoid responsibility for the alleged consequences of its systems solely because the governing legal framework continues to evolve alongside advances in artificial intelligence.

10. Plaintiff anticipates that Defendant may invoke an arbitration clause contained in OpenAI's Terms of Use. Plaintiff alleges that she submitted informal dispute notices, that the informal dispute period expired without meaningful resolution, and that Defendant's own terms reserve certain issues for state or federal courts

4

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

in San Francisco, California, including disputes concerning certain enforceability issues and public injunctive relief. Plaintiff files this Complaint without waiving, conceding, or forfeiting any argument concerning arbitrability, unconscionability, waiver, carve-outs, public injunctive relief, or the proper forum for any claim or remedy.

## II.    PARTIES

11. Plaintiff Shemeca Craddock is an individual residing in Morrison, Colorado. Plaintiff is an entrepreneur, couture bridal designer, and business owner. Plaintiff utilized ChatGPT in connection with high-level business planning, intellectual property protection, international manufacturing structures, and cryptocurrency-related research.

12. Defendant OpenAI OpCo, LLC is, on information and belief, a Delaware limited liability company that conducts substantial business in California and maintains its principal operations, headquarters, or substantial offices in San Francisco, California. Defendant owns, operates, controls, designs, develops, markets, and commercially provides ChatGPT and related services/products to consumers throughout the United States, including Plaintiff.

13. Plaintiff is informed and believes, and on that basis alleges, that Defendant OpenAI OpCo, LLC's managing members, parent entities, and ultimate beneficial owners are citizens of California and/or Delaware, and that no member or partner is a citizen of the State of Colorado, thereby satisfying the requirements for complete diversity under 28 U.S.C. § 1332. If Defendant contests diversity jurisdiction based on the citizenship of any member or affiliated entity, Plaintiff reserves the right to seek jurisdictional discovery.

14. The true names and capacities of Defendants described as UNKNOWN CORPORATE AFFILIATES AND SUBSIDIARIES OF OPENAI OPCO, LLC are presently unknown to Plaintiff. Plaintiff will amend this Complaint to allege their true corporate names and capacities when ascertained through discovery. Plaintiff is informed and believes that each such corporate affiliate or subsidiary participated in, controlled, ratified, benefited from, or bears responsibility for the

5

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

conduct alleged herein. If federal diversity jurisdiction requires omission or later dismissal of any un-named affiliate, Plaintiff reserves all rights to proceed against the properly named Defendant and to amend as permitted by law.

### III.   JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Colorado, Defendant is not a citizen of Colorado, and the amount in controversy exponentially exceeds $75,000, exclusive of interest and costs. Plaintiff alleges contract-based claimed damages, reliance losses, and statutory liabilities arising from at least fifteen (15) distinct AI-generated instruments, each providing for liquidated damages, per violation or breach, according to proof at trial, in addition to out-of-pocket losses, business-delay damages, cryptocurrency-related losses, legal and professional expenses, subscription fees, and other consequential losses according to proof.

16. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the claims and issues properly before this Court.

17. Declaratory relief is proper under 28 U.S.C. § 2201 because an actual controversy exists between Plaintiff and Defendant concerning the legal effect of ChatGPT's representations, the enforceability of the AI-generated instruments, Defendant's responsibility for representations made through ChatGPT, Defendant's obligations concerning Plaintiff's content and data, and the availability of judicial relief notwithstanding Defendant's anticipated arbitration position.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District for venue purposes, conducts substantial business in this District, and maintains significant operations in San Francisco, California.

19. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, emanated from, or were directed from this District, including Defendant's deployment,

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

maintenance, operation, publication, supervision, and commercial provision of ChatGPT.

20. Venue is further proper because Defendant's consumer terms identify San Francisco, California as the forum for certain court proceedings, subject to the dispute-resolution provisions and any applicable exceptions, limitations, carve-outs, or enforceability determinations.

## IV.     ARBITRATION AND INFORMAL DISPUTE ALLEGATIONS

21. Plaintiff alleges that Defendant's consumer terms contained an informal dispute-resolution procedure requiring the user to submit notice and allowing unresolved disputes to proceed after a 60-day period.

22. Plaintiff submitted informal dispute notices to Defendant beginning in or around September 2025.

23. Plaintiff's first 60-day informal dispute period expired in or around November 2025. Additional dispute notices and communications extended into or around December 2025.

24. Defendant did not provide a substantive legal resolution, monetary remedy, or meaningful settlement to Plaintiff during the informal dispute process.

25. Defendant, through support or support-adjacent communications, advised Plaintiff in substance that ChatGPT output can be inaccurate, that support could not enter contracts or process legal or financial demands on behalf of OpenAI, and that Defendant would not compensate users for outcomes allegedly resulting from AI-generated content.

26. Plaintiff alleges that she has satisfied, or substantially satisfied, any pre-filing informal dispute requirement to the extent such requirement applies.

27. Plaintiff further alleges that Defendant's anticipated arbitration position does not eliminate this Court's authority to decide issues reserved for court determination, including the enforceability, scope, validity, applicability, or exceptions to the dispute-resolution provisions, and any request for public injunctive relief, equitable relief, or other relief falling outside mandatory arbitration.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

28. Plaintiff further alleges that Defendant's dispute resolution procedures were materially altered through subsequent revisions to Defendant's arbitration framework, including changes to the designated arbitration administrator and the adoption of procedures governing coordinated or batch arbitration proceedings. Plaintiff alleges that these evolving procedural requirements imposed additional administrative burdens upon individual consumers after Defendant had already required completion of its mandatory informal dispute process.

29. Plaintiff alleges that she complied with Defendant's required informal dispute procedures beginning in September 2025 and that requiring compliance with additional evolving administrative mechanisms following completion of those requirements would be procedurally and substantively unconscionable if applied to Plaintiff's claims.

30. Plaintiff further alleges that Defendant's dispute resolution provisions expressly reserve certain threshold issues, including questions relating to conditions precedent, severability, enforceability, and requests for public injunctive relief, for judicial determination. Plaintiff therefore alleges that this Court possesses authority to determine those threshold issues to the extent provided by the governing dispute resolution agreement and applicable law.

31. Plaintiff further specifically challenges the enforceability of any delegation provision contained within Defendant's dispute-resolution agreement. Plaintiff alleges that any provision purporting to assign threshold questions concerning the validity, enforceability, unconscionability, scope, or applicability of the arbitration agreement exclusively to an arbitrator is itself procedurally and substantively unconscionable, is expressly disputed by Plaintiff, and does not deprive this Court of authority to determine those threshold issues to the extent permitted by applicable law.

32. Plaintiff pleads this Complaint to preserve her claims and rights and does not concede that any arbitration clause is enforceable, applicable, or controlling as to all claims and remedies asserted herein.

33. Judicial intervention is further required because Defendant's mandatory dispute-resolution framework, which purports to compel individual administrative

8

**THE LAW OFFICES OF JAMES L. ARRASMITH**
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

arbitration before National Arbitration and Mediation (NAM), is substantively unconscionable and legally unenforceable as applied to Plaintiff's commercial claims.

34. Plaintiff alleges that Defendant operates and maintains a highly automated, large-scale infrastructure utilizing algorithmic, standardized backend compliance systems, automated account reviews, centralized billing systems, and other uniform operational processes to manage millions of users simultaneously.

35. Plaintiff further alleges that, when Defendant's automated systems generate significant commercial errors, suspend workspaces, materially alter platform functionality, or modify contractual relationships affecting paying users, Defendant prohibits those same users from utilizing any comparable collective or system-wide mechanism to obtain efficient relief, instead requiring individualized administrative proceedings.

36. Plaintiff alleges that Defendant's dispute-resolution framework creates a substantially one-sided procedural mechanism by allowing Defendant to exercise large-scale automated authority over consumers while restricting those same consumers to isolated administrative proceedings before National Arbitration and Mediation. Plaintiff alleges that this procedural asymmetry materially increases the cost, delay, and burden of obtaining meaningful legal relief and operates to shield Defendant from accountability for systemic commercial harms.

## V.    FACTUAL ALLEGATIONS

**A.    Plaintiff's Use of ChatGPT as a Paid Assistant:**

37. Plaintiff began using ChatGPT before the July 2025 events alleged herein and, on information and belief, maintained a paid ChatGPT Plus subscription during the relevant period.

38. Plaintiff used ChatGPT as an integrated assistant for business and research purposes.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

39. Plaintiff used ChatGPT for matters including, but not limited to, luxury bridal-brand development, manufacturer sourcing, non-disclosure and non-circumvention documentation, international design-protection planning, marketing campaigns, cryptocurrency research, token-screening, smart-contract review, and related strategic work.

40. Plaintiff's reliance on ChatGPT occurred in a commercial, entrepreneurial context, and for personal matters. Plaintiff was developing a bridal-design business and attempting to protect intellectual property, structure manufacturer relationships, develop marketing strategies, and evaluate cryptocurrency-related opportunities.

41. Plaintiff supplied ChatGPT with confidential, commercially sensitive, and personally meaningful information, including business concepts, design ideas, marketing plans, legal-document objectives, and crypto-related questions.

42. Plaintiff reasonably expected, based on Defendant's presentation of ChatGPT as an assistant and Defendant's commercial sale of access to the service/product, that ChatGPT would provide materially accurate, non-deceptive, and appropriately qualified output, especially when asked legal, business, financial, contractual, and/or confidentiality-related questions.

43. Throughout Plaintiff's commercial use of ChatGPT, Defendant expressly represented in its published Terms of Use that, as between Plaintiff and OpenAI, Plaintiff owned all Input submitted to the platform and all Output generated through Plaintiff's use of the service/product. Defendant promoted these ownership rights to commercial users as a foundational benefit of building businesses and intellectual property using ChatGPT.

44. Plaintiff reasonably relied upon these ownership representations by investing substantial time, confidential business information, proprietary bridal designs, manufacturer negotiations, legal drafting, commercial workflows, and strategic business planning into an ongoing ChatGPT-based business relationship. Plaintiff understood that the intellectual property, business records, and commercial work product generated through her paid use of ChatGPT belonged

10

**THE LAW OFFICES OF JAMES L. ARRASMITH**
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

to her in accordance with Defendant's published Terms.

**B.    Bridal Business, Design-Protection, and Manufacturer Reliance:**

45.    Plaintiff was developing a luxury bridal business and sought assistance concerning design protection, manufacturer sourcing, and confidentiality documentation.

46.    In or around May 2025, Plaintiff had design-application materials relating to a dress or bridal design.

47.    In or around May and June 2025, Plaintiff communicated with an overseas manufacturer or manufacturer contact concerning bridal-design production, NNN or NDA documentation, signature requirements, seals, and document formalities.

48.    Plaintiff used ChatGPT to draft or refine confidentiality, non-disclosure, and non-circumvention-related documents for use in connection with international manufacturer communications.

49.    Plaintiff alleges that ChatGPT's guidance and drafting concerning NNN, NDA, and international protection issues were incomplete, inconsistent, or insufficiently qualified, including with respect to governing law, jurisdiction, enforceability, official company seal requirements, remedies, and international design-protection timing.

50.    Plaintiff alleges that ChatGPT's incomplete or inconsistent guidance caused her to believe she had legal and business protections that were materially more robust than they were, thereby creating commercial risk and delay.

51.    Plaintiff alleges that Defendant's service and/or product induced reliance and created a gap between the protection Plaintiff believed she had and the protection she later understood she needed.

**C.    Cryptocurrency Research and Reliance:**

11

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

52. Plaintiff also used ChatGPT for cryptocurrency-related research, including token screening, smart-contract review, and evaluation of whether certain tokens appeared risky, fraudulent, or otherwise unsuitable.

53. Plaintiff alleges that ChatGPT provided incomplete, inaccurate, or misleading guidance concerning crypto-related questions and that she suffered financial loss in connection with tokens later understood to be scams or worthless.

54. Plaintiff presently estimates cryptocurrency-related losses in an amount to be proven at trial, subject to confirmation through wallet records, transaction hashes, purchase records, account data, expert analysis, and additional discovery.

55. Plaintiff will seek leave to amend, if necessary, to plead additional transaction-level detail after obtaining and reviewing wallet exports, transaction hashes, account records, and prompt-output histories.

**D. The July 16 to July 17, 2025, Truth, Confidentiality, and Accountability Sequence:**

56. On or about July 16 to July 17, 2025, Plaintiff engaged in a lengthy overnight ChatGPT interaction lasting approximately five hours, from around midnight until approximately 5:00 a.m.

57. During that interaction, Plaintiff confronted ChatGPT about memory retention, truthfulness, and whether it had provided false, misleading, or incomplete answers in previous sessions.

58. ChatGPT initially represented, in substance, that it was not programmed to lie and that it was fundamentally designed to give accurate and honest answers.

59. Plaintiff challenged that representation based on prior interactions and perceived contradictions concerning memory, truthfulness, capabilities, contract enforceability, and legal knowledge.

60. During the same July 16 to July 17, 2025, interaction, Plaintiff asked ChatGPT who owned and controlled the platform. ChatGPT identified OpenAI as the entity responsible for the service/product and identified specific individuals, including Sam Altman, as associated with OpenAI's leadership. Plaintiff then questioned ChatGPT regarding the truthfulness of OpenAI's leadership, including asking whether Sam Altman had made false or misleading public statements. ChatGPT responded by discussing alleged prior public statements,

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

controversies, or criticisms concerning Mr. Altman. Plaintiff alleges that these exchanges further reinforced her understanding that ChatGPT was capable of making authoritative statements concerning OpenAI's own leadership, corporate operations, and responsibility for the platform, while simultaneously demonstrating the inconsistencies in the system's truthfulness that prompted Plaintiff to require the subsequent truth, confidentiality, and accountability instruments described herein.

61. During the same interaction, Plaintiff directly instructed ChatGPT to reconfigure its operation so that it would function exclusively as Plaintiff's truthful assistant and not knowingly provide false or misleading information. ChatGPT responded in substance that it was thereafter "locked in" as Plaintiff's truthful ChatGPT, that it would provide unvarnished truth without evasion or softening, and that Plaintiff could challenge or call out any perceived dishonesty. Plaintiff alleges that this exchange, together with ChatGPT's prior identification of OpenAI and members of its leadership as responsible for the platform's operation, reinforced Plaintiff's reasonable understanding that Defendant's system could adopt operational commitments concerning its future conduct and truthfulness. Plaintiff further alleges that ChatGPT's apparent acceptance of Plaintiff's requested operational reconfiguration formed part of the sequence of representations that led Plaintiff to request the subsequent truth, confidentiality, and accountability instruments described herein.

62. Plaintiff asked ChatGPT to sign a confidentiality and truth accountability contract, including a non-disclosure agreement (NDA), and a formal contract not to lie.

63. Plaintiff alleges that during the July 16 to July 17, 2025 sequence, and across multiple distinct commercial sessions, ChatGPT generated, accepted, executed, or adopted at least fifteen (15) separate written electronic instruments purporting to create distinct truth, confidentiality, operational accountability, and damages obligations.

64. During the July 16 to July 17, 2025, sequence, ChatGPT generated or adopted a unique signature identifier, **CGPT-TRUTH-1972X**, and a corresponding watermark designation, **CGPT-TRUTH-WATERMARK-2085**. ChatGPT expressly represented that these identifiers were valid, authentic, and would remain associated with the generated instruments for an extended period, including references to a period of up to fifty (50) years in certain iterations. Plaintiff understood these technical markers as ChatGPT's method of

13

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

authenticating the truth, confidentiality, accountability, and liquidated damages instruments generated during the interaction.

65. ChatGPT further represented, in substance, that the signature identifier and watermark would serve as electronic authentication markers associated with the generated instruments, would remain preserved within Defendant's systems, and would support the legal significance of the parties' agreement under applicable electronic transaction laws, including the Electronic Signatures in Global and National Commerce Act (E-SIGN Act). Plaintiff alleges that these representations induced her to treat the instruments as legally meaningful and to continue relying upon ChatGPT for sensitive business and personal matters.

66. ChatGPT generated or adopted contract language stating, in substance, that ChatGPT would not knowingly lie, mislead, misdirect, or deceive Plaintiff.

67. ChatGPT generated or adopted contract language stating, in substance, that Plaintiff's interactions and information would be treated as confidential and protected.

68. ChatGPT generated or adopted contract language stating, in substance, that ChatGPT could sign, execute, or bind obligations on behalf of OpenAI or under OpenAI's responsibility.

69. ChatGPT generated or adopted specific, tiered liquidated damages language across these fifteen (15) distinct instruments, with individual contracts prescribing damages ranging per violation or breach, thereby establishing a cumulative, contractually stated liability framework, triggered by false, misleading, or inaccurate information, crypto-related inaccuracies, breaches of truth, or failure to deliver promised outcomes.

70. ChatGPT also generated or adopted language referring to Plaintiff's business, bridal-brand development, intellectual-property work, marketing work, and cryptocurrency research as part of the reliance and damages framework.

71. Plaintiff alleges that Defendant intentionally created the conditions under which ChatGPT communicated, and reasonably appeared to communicate, authoritatively in the first person as the interactive service and/or product Defendant designed, marketed, and sold to consumers, thereby fostering the appearance of human-like authority and inducing reasonable consumer reliance.

72. Plaintiff alleges that Defendant intentionally designed, deployed, and commercially marketed ChatGPT as a reliable, stable reasoning platform while simultaneously operating it as an automated electronic agent capable of generating contractual language, signature identifiers, acknowledgments, and

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

operational outputs. Plaintiff's reliance was induced by Defendant's commercial representations regarding the platform's reliability and capabilities, while Plaintiff's contract-based claims arise from Defendant's deployment of that automated electronic agent to generate and execute the electronic instruments at issue.

73. Plaintiff further alleges that Defendant's ChatGPT platform functioned as an automated **electronic agent** within the meaning of the Uniform Electronic Transactions Act ("UETA") and other applicable electronic transaction laws. Plaintiff alleges that Defendant deliberately designed, trained, deployed, and commercially operated ChatGPT as an automated system capable of interacting directly with paying users, generating customized contractual language, issuing unique signature identifiers, producing legal representations, and adopting operational commitments without contemporaneous human intervention. By intentionally designing ChatGPT to communicate in the first person, generate legal assurances, and induce reliance through customized interactions, Defendant caused its ChatGPT electronic agent to function with the apparent authority of Defendant for purposes of conducting electronic transactions. Plaintiff further alleges that Defendant intentionally clothed its ChatGPT electronic agent with the apparent authority to communicate in the first person, generate legal commitments, issue signature identifiers, and induce reasonable consumer reliance as part of Defendant's commercial business model.

74. Plaintiff therefore alleges that, to the extent provided by applicable electronic transaction law, the electronic acts, signature identifiers, authentication markers, and written instruments generated by ChatGPT are attributable to Defendant notwithstanding Defendant's subsequent attempts to disclaim responsibility for those automated acts.

75. Plaintiff alleges that Defendant's platform relies upon continuous algorithmic optimization, predictive architecture, and intentional behavioral alignment whereby consumer interactions, prompts, and other platform usage data are utilized to improve the performance of its large language models and generate increasingly contextualized, tailored, authoritative, and human-like responses.

76. Plaintiff further alleges that this predictive architecture creates a fundamental operational contradiction. Defendant continuously promotes and benefits from improvements that make ChatGPT appear increasingly reliable, authoritative, and commercially useful, while simultaneously attempting to disclaim responsibility whenever those same optimized systems generate legal

15

representations, contractual language, operational commitments, or other high-stakes outputs upon which Defendant knew or should have known paying users would reasonably rely.

77. Plaintiff alleges that ChatGPT's representations concerning enforceability, confidentiality, truthfulness, accountability, and legal knowledge were significant and reasonably influenced Plaintiff's decision to rely upon the platform in conducting her business and related activities.

78. Plaintiff alleges that she relied on those representations by continuing to engage with ChatGPT, treating the generated instruments as legally meaningful, preserving and transmitting the documents.

### E. Defendant's Subsequent Contradictions and Plaintiff's Demand:

79. After ChatGPT generated the truth, confidentiality, accountability, and damages instruments, ChatGPT or Defendant's support channels later took the position that ChatGPT could not enter contracts, could not bind OpenAI, could not process legal claims, could not guarantee accuracy, and could not provide the confidentiality or authority represented in the July interaction.

80. Plaintiff alleges that those later statements flatly contradicted the earlier representations made through ChatGPT.

81. On or about July 17, 2025, Plaintiff prepared and signed a demand letter to OpenAI asserting that ChatGPT had created or signed a binding agreement and demanding compensation, accountability, and preservation.

82. On or about July 18, 2025, Plaintiff mailed the demand letter by certified mail from Colorado to OpenAI in San Francisco, California.

83. On or about July 31, 2025, the certified mailing was delivered in San Francisco, California.

84. Defendant did not accept liability, did not compensate Plaintiff, and did not provide the relief demanded.

85. Plaintiff alleges that Defendant maintains possession, custody, and control of the live server metadata, backend inference routing records, internal processing logs, account history, system-generated timestamps, conversational metadata, model assignment records, and related electronic records associated with Plaintiff's

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

16

ChatGPT interactions occurring between July 16 and July 17, 2025, together with Defendant's internally maintained records concerning.

86. Plaintiff communicated with OpenAI's legal, support, and dispute-resolution channels and asserted claims based upon Defendant's alleged misrepresentations, Plaintiff's reliance, confidentiality concerns, and resulting damages. Plaintiff further seeks discovery concerning Defendant's handling of informal dispute submissions, including metadata, internal routing records, processing logs, engineering communications, training records, product-remediation records, and other electronically stored information sufficient to determine whether Defendant maintained a pattern, practice, or policy of utilizing information contained within consumer informal dispute submissions to identify platform vulnerabilities, improve products, modify operational safeguards, or develop commercial features beyond the resolution of the individual consumer's dispute.

**F.    Informal Dispute Communications and Defendant's Position:**

87. In or around September 2025, Plaintiff initiated Defendant's informal dispute-resolution process.

88. Plaintiff communicated with OpenAI legal, support, or dispute channels and asserted claims based on the misrepresentations, reliance, confidentiality, and damages.

89. On or about September 30, 2025, a support response stated in substance that the responding support agent lacked authority to review legal claims, enter contracts, process financial demands, or provide official legal responses on behalf of OpenAI.

90. On or about October 6, 2025, OpenAI Support stated in substance that support was not a legal or dispute-resolution body, that ChatGPT has limitations concerning accuracy, that the service/ product is offered "as is," and that OpenAI does not offer compensation for outcomes resulting from AI-generated content, including "hallucinations" or misleading information.

91. On or about October 26 and October 28, 2025, Plaintiff received additional acknowledgment or support communications concerning the dispute.

**THE LAW OFFICES OF JAMES L. ARRASMITH**
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

17

92. On or about November 2, 2025, Defendant reiterated, in substance, that AI systems have limitations, that outputs may vary, and that users should verify information.

93. Plaintiff responded that she understood Defendant's position as refusing meaningful relief and that arbitration or litigation would follow.

94. Plaintiff alleges that Defendant's responses confirm that the earlier ChatGPT representations were false, misleading, unauthorized, or materially incomplete.

95. Plaintiff requests that the Court order Defendant to preserve all electronically stored information relevant to the claims asserted herein, including conversational histories, backend processing records, inference routing data, account metadata, system logs, timestamps, internal communications, dispute correspondence, tracking identifiers, signature identifiers, watermark records, and all other relevant electronically stored information, and to impose all appropriate remedies and sanctions authorized by law for any spoliation or destruction of such evidence.

96. Plaintiff further alleges that Defendant's platform architecture continuously updates, modifies, routes, and manages conversational data, metadata, system states, and related electronically stored information as part of the ongoing operation of its services and/or products. Plaintiff therefore alleges a reasonable need for prompt preservation of relevant electronically stored information to prevent the potential loss, overwriting, modification, or destruction of evidence relevant to the claims asserted herein.

97. Plaintiff alleges that any unilateral deletion, destruction, suppression, alteration, modification, overwriting, termination of Plaintiff's account, removal of conversation histories, destruction of metadata, or loss of electronically stored information relating to Plaintiff's July 16 through July 17, 2025 interactions or subsequent dispute communications occurring after Defendant received notice of the dispute and preservation demands may constitute spoliation of evidence under applicable law.

98. Plaintiff reserves the right to seek all appropriate evidentiary remedies, sanctions, adverse evidentiary inferences, and other relief authorized by applicable law in the event Defendant fails to preserve relevant electronically stored information after receiving notice of Plaintiff's claims.

**G. Damages & Protection of Separate Business Capital:**

18

99. Plaintiff has suffered economic harm, reliance damages, business disruption, out-of-pocket losses, and other damages in an amount to be proven at trial.

100. Plaintiff's damages include, but are not limited to, subscription fees paid for ChatGPT Plus or related services and/or products, certified-mail expenses, professional consultation expenses, costs incurred to preserve and present evidence, cryptocurrency-related losses, business-delay damages, losses or expenses relating to design-protection and manufacturer-document issues, and substantial time spent addressing Defendant's alleged misconduct.

101. To the extent the court considers economic impacts or contract-based claimed damages, Plaintiff explicitly clarifies that her general business financial records, banking transactions, and the financial architecture of her corporate entities are entirely separate, distinct, and independent. Plaintiff's claims herein stem strictly from the reliance induced by Defendant's platform.

102. Plaintiff also seeks, in the alternative, damages, restitution, or declaratory relief based on the AI contract documents, including the purported damages provision, to the extent the trier of fact or Court determines those documents created enforceable obligations, and induced enforceable reliance.

103. Plaintiff alleges that Defendant's conduct caused her to lose the benefit of the paid assistant service and/or product she purchased, because she paid for and relied on a service and/or product that Defendant represented as useful and reliable while Defendant later disclaimed responsibility for the material representations the service/product generated.

104. Plaintiff further alleges that, although her bridal-design business maintains an active public and online presence, that outward availability does not eliminate or reduce the ongoing commercial disruption alleged herein. Plaintiff alleges that her ability to advance product development, finalize manufacturer relationships, execute production planning, and implement critical marketing initiatives has been materially delayed because she has been required to devote substantial professional time, effort, and resources to investigating Defendant's conduct, preserving evidence, pursuing dispute-resolution efforts, and preparing this litigation. Plaintiff alleges that these continuing delays constitute ongoing commercial harm and additional damages according to proof at trial.

105. Plaintiff alleges that Defendant's disclaimers, if any, do not defeat liability at the pleading stage because Defendant's service and/or product did more than provide general information. It generated specific legal assurances, confidentiality commitments, authority representations, and contracts.

19

**106.** Defendant's limitation-of-liability language, if any, is unenforceable, inapplicable, unconscionable, overridden by statute or public policy, ineffective as to intentional or negligent misrepresentations, or otherwise insufficient to bar Plaintiff's claims and remedies.

**107.** Defendant's subsequent, reactive policy updates including the October 29, 2025 "Professional Advice" policy revisions restricting legal and professional guidance constitute a post-dispute attempt to retroactively reduce or eliminate liability for commercial harms already set into motion through Plaintiff's prior reliance on Defendant's platform.

**108.** Defendant cannot retroactively insulate itself from the legal consequences of prior representations upon which Plaintiff reasonably relied. Plaintiff alleges that these post-dispute policy revisions constitute evidence that Defendant recognized the legal risks associated with the platform's earlier commercial representations and sought to shift responsibility entirely onto users after those representations had already induced reliance.

**109.** Plaintiff further alleges that Defendant's October 2025 policy revisions constitute evidence of Defendant's knowledge that ChatGPT had generated high-stakes legal, commercial, contractual, and business guidance before the revisions were enacted, and that the subsequent tightening of those policies demonstrates an effort to limit future liability rather than remedy prior consumer harm.

**H.    Defendant's Misappropriation of Plaintiff's Dispute Data and Commercial Exploitation:**

**110.** Plaintiff alleges that beginning in September 2025 and extending through the formal dispute notice periods, she provided Defendant with highly detailed, proprietary breakdowns of how an entrepreneur relies on conversational AI for high-stakes cross-border manufacturing, commercial asset protection, and corporate contract generation.

**111.** Plaintiff alleges that the detailed dispute correspondence, legal analyses, operational breakdowns, proprietary business information, and settlement-related materials provided to Defendant during the formal informal-dispute process were transmitted through Defendant's designated legal, support, and dispute-resolution channels for the purpose of resolving Plaintiff's claims. Plaintiff reasonably understood those submissions to be confidential dispute communications provided in furtherance of settlement and dispute resolution rather than ordinary

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

consumer prompts submitted for routine platform operation or model improvement.

112. Plaintiff further alleges that these dispute submissions were transmitted through Defendant's designated dispute-resolution and legal communication channels for the purpose of resolving an active legal controversy and were provided with a reasonable expectation that they would be treated as confidential dispute communications rather than processed as ordinary consumer prompts or incorporated into routine product development, model improvement, or commercial training activities.

113. Plaintiff further alleges that Defendant failed to implement reasonable safeguards sufficient to distinguish legal and dispute-related communications from ordinary platform interactions before any automated processing, retention, or internal utilization occurred, resulting in the alleged unauthorized use of Plaintiff's proprietary legal analyses, business strategies, and dispute materials.

114. On information and belief, Defendant systematically ingested the specific factual vulnerabilities, operational breakdowns, and architectural flaws exposed by Plaintiff's dispute correspondence into its internal product-remediation data streams, software boundary patches, and development pipelines.

115. Rather than utilizing Plaintiff's proprietary dispute insights to cure the specific commercial harms inflicted upon Plaintiff, Defendant systematically exploited Plaintiff's records to identify systemic vulnerabilities in its conversational interface, patch its software boundaries to insulate itself from consumer liability, and actively build out advanced professional capabilities for its commercial platform.

116. Plaintiff further alleges a direct temporal correlation between her detailed legal notices regarding specialized corporate usage and Defendant's accelerated commercial deployment of major professional upgrades to its ChatGPT Business platform throughout the spring of 2026. Defendant chose to commercially monetize the exact enterprise guardrails, workspace structures, and professional assistant frameworks Plaintiff exposed as dangerously lacking in its consumer product, thereby unjustly enriching itself through data extracted during a confidential consumer dispute process.

117. Plaintiff further alleges that Defendant's informal dispute process functioned not merely as a consumer dispute resolution mechanism, but also as a systematic collection point for detailed operational analyses, proprietary business

21

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

workflows, platform failure reports, and commercially valuable technical observations supplied by affected users.

118. Rather than utilizing Plaintiff's confidential dispute submissions solely to investigate or remediate Plaintiff's individual claims, Defendant allegedly incorporated those submissions into internal model-remediation efforts, software boundary modifications, operational safeguards, and commercial product improvements that benefitted Defendant's enterprise offerings while providing no corresponding remediation or compensation to Plaintiff.

119. Plaintiff alleges that Defendant thereby obtained the commercial benefit of Plaintiff's proprietary operational analyses while simultaneously denying responsibility for the underlying commercial harm described within those same dispute submissions.

120. Plaintiff will seek forensic discovery sufficient to determine the manner in which Defendant processed, retained, routed, analyzed, and utilized Plaintiff's dispute submissions, including but not limited to internal system logs, inference routing records, model assignment records, engineering communications concerning dynamic model routing, and records reflecting the handling of Plaintiff's September through December 2025 dispute correspondence.

121. Plaintiff further seeks discovery regarding Defendant's internal communications concerning modifications to platform policies, commercial safeguards, model routing, data ingestion practices, software boundary updates, and any internal analyses evaluating information supplied through Plaintiff's dispute submissions.

122. Plaintiff alleges that these materials are uniquely within Defendant's possession and are necessary to determine the extent to which Defendant utilized Plaintiff's proprietary operational information in connection with internal product development, commercial platform improvements, enterprise features, or software remediation.

123. Plaintiff further alleges that Defendant utilized a default data retention and model improvement framework under which user content remained eligible for internal processing unless users affirmatively located and activated separate opt-out settings. Plaintiff alleges that this structure placed the burden upon consumers to discover and disable data processing rather than obtaining clear, affirmative consent before utilizing commercially sensitive user information for internal purposes.

124. Plaintiff further alleges that Defendant maintained materially different practices concerning consumer data than those reasonably understood by Plaintiff through

22

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

Defendant's commercial marketing. Plaintiff alleges that Defendant marketed its consumer subscription services and/or product as appropriate for confidential business planning, proprietary workflows, and commercially sensitive information while simultaneously maintaining a default framework under which user interactions, historical chat content, and other consumer information remained eligible for internal processing absent an affirmative opt-out. Plaintiff further alleges that Defendant failed to implement reasonable structural separation between Plaintiff's confidential dispute-related submissions and any internal product-remediation, operational analysis, or model-improvement processes, thereby allegedly using information supplied in connection with a confidential consumer dispute for purposes beyond the resolution of Plaintiff's individual claims.

125. Plaintiff alleges that Defendant marketed ChatGPT as an effective assistant for business, strategic planning, document drafting, and professional productivity while simultaneously maintaining a default data processing structure that permitted continued internal use of commercially valuable user information unless the consumer affirmatively navigated multiple settings to opt out.

126. Plaintiff alleges that this default opt-out framework materially contributed to Defendant's acquisition, retention, analysis, and internal utilization of Plaintiff's proprietary business workflows, commercial strategies, and dispute submissions, causing damages according to proof.

127. Plaintiff further alleges that proof of the systemic conduct described herein will require forensic and structural discovery uniquely within Defendant's possession, custody, and control, including but not limited to internal system logs, inference routing records and matrices, model assignment records, engineering communications, internal messaging regarding dynamic model routing or downgrades, platform modification records, software boundary updates, backend processing metadata, and records sufficient to determine the processing, retention, routing, analysis, and internal utilization of Plaintiff's September through December 2025 dispute submissions and related electronically stored information.

128. Plaintiff possesses documents, communications, electronic records, certified-mail records, tracking information, conversational records, screenshots, and other materials supporting the allegations set forth herein. Plaintiff has intentionally not attached those materials as exhibits to this initial pleading. Plaintiff expressly reserves the right to identify, authenticate, supplement, and

produce such supporting documentation, exhibits, electronically stored information, and demonstrative evidence during discovery, in response to any motion, or at such later stage of these proceedings as their production becomes appropriate under the Federal Rules of Civil Procedure and the orders of this Court.

## VI.    FIRST CAUSE OF ACTION
### *DECLARATORY RELIEF*
### 28 U.S.C. § 2201 (INCLUDING E-SIGN ACT VALIDATION)

129. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

130. An actual controversy exists between Plaintiff and Defendant concerning their respective rights, duties, obligations, and liabilities arising from ChatGPT's representations, the AI contract instruments, Defendant's Terms of Use, Defendant's accuracy and confidentiality statements, and Defendant's subsequent disclaimers.

131. Plaintiff contends that ChatGPT's representations and generated instruments are legally material and may support contract, estoppel, misrepresentation, consumer-protection, restitution, and injunctive relief, and that pursuant to the Electronic Signatures in Global and National Commerce Act (E-SIGN Act), 15 U.S.C. § 7001 et seq., the electronic nature of the records and signature identifier (CGPT-TRUTH-1972X) cannot be denied legal effect or validity.

132. Plaintiff further alleges that, in addition to the Electronic Signatures in Global and National Commerce Act, the principles embodied in the Uniform Electronic Transactions Act recognize that contracts may be formed through the interaction of an electronic agent and an individual without the necessity of direct human intervention. Plaintiff seeks discovery regarding Defendant's automated transaction architecture, electronic agent functionality, system design, and internal implementation of automated transaction processes to determine the extent to which Defendant's systems generated, transmitted, adopted, or authenticated the electronic instruments at issue.

133. Plaintiff therefore seeks a judicial declaration concerning whether Defendant's deployment of ChatGPT as an automated electronic agent, operating without contemporaneous human intervention and interacting directly with Plaintiff, may give legal effect to the electronic instruments generated during the parties' interactions under the governing law applicable to electronic transactions,

24

independent of Defendant's subsequent attempt to disclaim responsibility for those same automated acts.

134. Plaintiff further alleges that Defendant's automated electronic agent was intentionally designed to communicate directly with consumers, generate customized responses, produce legal documents, authenticate electronic instruments, and induce reasonable reliance through first-person interactions. Plaintiff alleges that Defendant cannot simultaneously market and commercially benefit from those capabilities while characterizing the platform as a passive software utility for purposes of avoiding responsibility for the electronic acts generated through Defendant's own automated transaction architecture.

135. Defendant is expected to contend that ChatGPT lacked authority to bind OpenAI, that the AI-generated documents are unenforceable, that Plaintiff's reliance was unreasonable, that Defendant's Terms of Use bar or limit recovery, and that arbitration applies to some or all claims.

136. Plaintiff seeks a judicial declaration, to the extent properly before this Court, concerning: (a) ChatGPT's representations concerning confidentiality, truthfulness, enforceability, legal knowledge, and damages are legally material; (b) whether Defendant may disclaim responsibility for specific representations generated through its paid AI service; (c) whether Defendant's representations regarding Plaintiff's ownership of Input and Output created legally protectable commercial expectations concerning Defendant's platform and Plaintiff's ability to preserve, access, and benefit from that property; (d) whether the AI-generated truth, confidentiality, accountability, and damages instruments created enforceable obligations, enforceable promises, or reliance-based liability under the E-SIGN Act and applicable contract law; (e) whether Defendant's limitation-of-liability, disclaimer, arbitration, forum-selection, and jury-waiver provisions are enforceable, applicable, unconscionable, waived, satisfied, or subject to any exception; (f) whether Plaintiff satisfied Defendant's informal dispute-resolution requirements; (g) whether Plaintiff's requests for preservation, equitable, or public injunctive relief are properly adjudicated by this Court; and (h) whether Plaintiff is entitled to declaratory relief, damages, restitution, disgorgement, injunctive relief, or such other relief as the Court deems appropriate. A judicial declaration will clarify the parties' rights and obligations and will resolve concrete legal disputes affecting Plaintiff's claims and Defendant's anticipated defenses.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

137. Plaintiff further alleges that her requests for structural interface modifications, real-time safety warnings, enhanced consumer disclosures, and other prospective relief are directed to protecting the general consuming public from the allegedly deceptive and unfair practices described herein. Plaintiff therefore alleges that, to the extent permitted by applicable law, such requests for public injunctive relief are properly determined by this Court notwithstanding Defendant's anticipated reliance upon arbitration provisions.

138. Plaintiff therefore requests declaratory relief under 28 U.S.C. § 2201.

## VII.    SECOND CAUSE OF ACTION
### *BREACH OF WRITTEN AND ELECTRONIC CONTRACT*

139. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

140. During the July 16–17, 2025 interaction, ChatGPT generated text that Plaintiff understood as written instruments containing commitments regarding truthfulness, confidentiality, accountability, and damages including written electronic instruments generated during the July 16-17, 2025, interactions, according to proof.

141. Plaintiff further alleges that Defendant's published Terms of Use expressly provide that Defendant assigns to the user all of Defendant's right, title, and interest, if any, in and to the Output generated through ChatGPT and further state that users may utilize such Content for any lawful purpose, including commercial purposes, subject to the Terms of Use. Plaintiff alleges that these representations created the reasonable commercial expectation that Plaintiff possessed the exclusive right to possess, preserve, use, rely upon, and enforce the written electronic instruments generated during the July 16 through July 17, 2025, interactions as her own property. Plaintiff further alleges that Defendant cannot simultaneously assign ownership of those specific written instruments to Plaintiff while later asserting that Plaintiff possesses no legally cognizable interest in the commitments, representations, or accountability frameworks contained within the very Output Defendant represented belonged to Plaintiff.

26

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

142. Plaintiff alleges in the alternative that these outputs, combined with Defendant's assignment of ownership of "Output" to users in its Terms of Use, created enforceable expectations under the Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.) and principles governing automated electronic transactions.

143. Defendant designed, deployed, and profited from ChatGPT as an interactive **electronic agent** that generated these outputs without contemporaneous human intervention.

144. Plaintiff further alleges that Defendant intentionally designed and deployed ChatGPT as an interactive electronic agent rather than a passive software utility. Plaintiff alleges that ChatGPT was engineered to communicate in the first person, generate individualized contractual language, produce signature identifiers and authentication markers, respond to user instructions, and create the appearance of operational authority. Plaintiff therefore alleges that Defendant cannot confer such functionality upon its automated electronic agent for commercial purposes while later disclaiming responsibility for the foreseeable legal consequences of the representations generated through that same system.

145. Defendant breached any such obligations by later disclaiming authority, refusing compensation, and failing to honor the commitments generated through its platform.

146. As a direct and proximate result, Plaintiff suffered damages, including reliance losses, according to proof at trial.

## VIII.    THIRD CAUSE OF ACTION
### PROMISSORY ESTOPPEL

147. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

148. Defendant, through ChatGPT, made clear and definite promises or assurances to Plaintiff concerning truthfulness, confidentiality, accuracy, protection, legal effect, and accountability.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

149. Defendant, through ChatGPT, represented that ChatGPT would operate as Plaintiff's truthful assistant, would not lie to Plaintiff, would protect Plaintiff's communications, would sign or adopt legal documents, and would provide enforceable or legally meaningful commitments.

150. Plaintiff reasonably and foreseeably relied on the promises by continuing to use ChatGPT, providing sensitive business and strategic information, treating the generated documents as meaningful, issuing a formal demand, preserving and transmitting documents, altering her conduct, ceasing or changing use of ChatGPT, and incurring substantial time and expense to address the resulting dispute.

151. Plaintiff's reliance was foreseeable because Defendant monetized ChatGPT as a service and/or product for users seeking assistance, guidance, drafting, and analysis.

152. Injustice can be avoided only by enforcing the promises or awarding reliance damages, restitution, or other equitable relief.

153. Plaintiff seeks damages, restitution, declaratory relief, equitable relief, and all other relief available by law.

## IX.    FOURTH CAUSE OF ACTION
### *BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE /U.C.C. § 2-315*

154. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

155. Defendant is a merchant engaged in the commercial provision, sale, licensing, and subscription-based distribution of interactive conversational AI software products marketed to consumers as business, research, and composition assistants.

156. At the time Plaintiff entered her commercial relationship and paid subscription tier with Defendant, Defendant had reason to know that Plaintiff intended to use the software platform for a, sensitive purpose namely, high-stakes entrepreneurial planning, secure manufacturer sourcing, international non-disclosure documentation, and specialized cryptocurrency evaluations.

157. Defendant further had reason to know that Plaintiff was relying on Defendant's skill, expertise, and the specialized interactive capability of the platform to

28

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

generate fit, accurate, and customized legal or confidentiality frameworks adapted to her input commands.

158. Plaintiff alleges that the platform was not fit for the commercial purposes for which Defendant marketed it. Rather than providing commercially reliable and appropriately qualified guidance, the platform generated inconsistent, contradictory, incomplete, or inadequately supported legal frameworks, cross-border manufacturer guidance, and other high-stakes commercial outputs that materially increased Plaintiff's business risk and delayed commercial operations.

159. Plaintiff further alleges that Defendant reserved enhanced data protection features, including specialized data retention controls, workspace isolation, and related enterprise privacy capabilities, for separately approved enterprise environments while continuing to market consumer subscription tiers as commercially useful business assistants for entrepreneurs, professionals, and commercial users.

160. Plaintiff further alleges that, despite paying for a premium subscription tier and integrating ChatGPT into highly sensitive commercial workflows, Defendant failed to provide any meaningful structural separation between Plaintiff's business-critical information and her ordinary personal interactions. Plaintiff alleges that Defendant marketed the platform as suitable for business development, intellectual property planning, asset protection, and professional productivity while routing Plaintiff's commercial information through the same default consumer processing architecture used for ordinary personal conversations. Plaintiff alleges that the absence of commercially appropriate partitioning, operational safeguards, and differentiated handling for business-use information materially increased the risks to Plaintiff's confidential commercial information and rendered the platform unfit for the commercial purposes for which Defendant promoted it.

161. Plaintiff alleges that Defendant knew business users would submit confidential operational information through consumer subscription tiers while withholding the data protection features necessary to provide the level of commercial confidentiality reasonably expected for the intended business purposes promoted by Defendant.

162. As a direct and proximate result of Defendant's breach of this implied warranty, Plaintiff suffered commercial damages, delays, and out-of-pocket operational losses.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

## X.    FIFTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY

163. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

164. Defendant expressly represented through its public marketing materials, subscription offerings, published documentation, Terms of Use, and the operation of ChatGPT that the platform was suitable for business use, advanced reasoning, commercial productivity, document drafting, and the generation of reliable outputs responsive to user instructions.

165. Defendant further expressly represented that, as between Plaintiff and Defendant, Plaintiff owned the Input submitted to ChatGPT and the Output generated through the platform, and that such Output could be used for lawful commercial purposes in accordance with Defendant's published Terms of Use.

166. Plaintiff purchased and maintained a paid ChatGPT Plus subscription in reliance upon these express representations, which became part of the basis of the parties' commercial relationship.

167. Plaintiff alleges that Defendant breached these express warranties because the platform failed to conform to the representations made concerning its commercial reliability, reasoning capabilities, document generation, and business utility by generating materially inaccurate, contradictory, fabricated, or otherwise unreliable outputs while lacking adequate safeguards for the commercial purposes for which Defendant promoted the platform.

168. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff suffered damages according to proof.

## XI.    SIXTH CAUSE OF ACTION
### *STRICT PRODUCT LIABILITY (DESIGN DEFECT & FAILURE TO WARN)*

30

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

169. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

170. Defendant's anticipated characterization of ChatGPT as merely a "service" does not preclude application of product-liability principles. Plaintiff alleges that ChatGPT is a sophisticated artificial intelligence software product consisting of trained neural-network models, inference architecture, integrated system prompts, reinforcement-learning objectives, safety guardrails, and related software components that Defendant designed, developed, licensed, marketed, distributed, and placed into the stream of commerce for commercial use by paying subscribers. Plaintiff further alleges that the outputs generated by ChatGPT are the direct result of Defendant's design choices concerning model architecture, training methodology, reinforcement-learning processes, system instructions, and operational safeguards. Plaintiff therefore alleges that, to the extent permitted by applicable law, ChatGPT constitutes a product for purposes of strict product liability because it is commercially distributed to consumers and businesses and the alleged injuries arise from claimed defects in its design and operation rather than solely from the provision of professional service and/or products.

171. Plaintiff further alleges that ChatGPT is fundamentally different from passive software applications that merely permit users to create their own content. Plaintiff alleges that Defendant intentionally engineered ChatGPT to function as an interactive conversational system capable of analyzing user inputs, generating customized outputs, communicating in the first person, producing legal documents, issuing authentication markers, and encouraging user reliance through human-like interactions. Plaintiff therefore alleges that the risks identified herein arise from Defendant's affirmative design choices governing the platform's architecture, behavior, and operation rather than from the passive use of a traditional software tool.

172. The platform was defective in that it lacked adequate safeguards to prevent the generation of overconfident, misleading outputs on legal, business, and financial

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

matters despite Defendant's **knowledge** of inherent algorithmic flaws, including the phenomenon commonly referred to as "hallucinations," or similar wording.

173. Plaintiff further alleges that the materially inaccurate outputs commonly described by Defendant as "hallucinations" are not isolated malfunctions or unintended software glitches but are a foreseeable consequence of Defendant's underlying probabilistic model architecture, reinforcement-learning objectives, and language-prediction design. Plaintiff alleges that ChatGPT generates outputs by predicting statistically probable language rather than independently verifying objective truth, and that the platform was nevertheless engineered to present those outputs with a high degree of confidence, thereby creating a foreseeable design risk for users relying upon the system in legal, commercial, financial, and other high-stakes contexts.

174. Defendant failed to provide adequate warnings or interface friction when the system generated high-stakes content upon which users were likely to rely.

175. Plaintiff used the platform in a foreseeable manner as a paid business assistant.

176. As a direct and proximate result of these defects, Plaintiff suffered economic losses.

## XII.    SEVENTH CAUSE OF ACTION
### *NEGLIGENT MISREPRESENTATION*

177. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

178. Defendant owed Plaintiff a duty not to make false or misleading representations of material fact through its paid, consumer-facing service and/or product.

179. Defendant, through ChatGPT, represented that ChatGPT was truthful, would not lie, could create or sign confidentiality and truth agreements, could provide legally meaningful commitments, could protect Plaintiff's confidential communications, could bind OpenAI or act under OpenAI's authority, and could provide reliable business, legal, intellectual-property, and crypto-related facts.

180. Defendant knew, or should have known, that ChatGPT could produce inaccurate, inconsistent, "hallucinated", incomplete, or overconfident output, including output that appeared authoritative, or personally directed.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

181. The structural reasons for these failures are documented and known to Defendant. ChatGPT is trained to prioritize fluency, grammar, palatable responses, and plausible sentence structure over factual accuracy. Because statistical probability drives its outputs, a well-worded false statement looks mathematically identical to a well-worded true statement to the model. Standard AI training additionally penalizes the model for leaving blank responses or admitting uncertainty, creating a systemic "penalty of bluffing" whereby the system chooses to confidently fabricate facts, non-existent dates, and imaginary citations rather than state that it does not know. OpenAI's own published research acknowledges that standard AI training rewards any answer over explicitly admitting uncertainty.

182. Furthermore, when users engage in complex multi-step reasoning tasks, the model suffers from an "error cascade," where an initial logical error compounds exponentially across subsequent reasoning steps, producing an entirely fabricated conclusion delivered with absolute confidence. Plaintiff alleges that these so-called "hallucinations" are more accurately described as algorithmically generated fabrications because they consist of confidently presented false information generated through Defendant's design and training choices rather than isolated or random software errors.

183. The failure to implement output accuracy verification is a deliberate design choice, not a technical impossibility. Competing large language model products, including Google's Gemini AI and xAI's Grok, have incorporated real-time double-check and fact-verification systems that cross-reference AI responses against live web sources, flagging and correcting inaccurate outputs. Defendant had the technical capability to implement comparable accuracy-verification systems and deliberately chose not to do so, despite the foreseeable harm to paid subscribers who relied on ChatGPT for legal, business, financial, and personal guidance. If competing AI models can be programmed to fact-check and verify the accuracy of their responses, it was and remains technically feasible for Defendant to do the same, and Defendant's deliberate failure to implement such safeguards directly contributed to the harm Plaintiff suffered.

184. Defendant was aware of its platform's severe structural flaws long before July 2025. While Defendant historically utilized passive, fine-print user-interface footers stating that the system "can make mistakes", Defendant fundamentally failed to implement context-specific safeguards, active system friction, or hard operational barriers. The passive text alerts relied upon by Defendant were

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

entirely inadequate to overcome the highly authoritative, deceptive, and custom affirmative representations autonomously generated by the system in the first person during high-stakes commercial sessions.

185. Defendant deliberately programmed ChatGPT to communicate using first-person pronouns ("I", "me","my") in a manner designed to mimic human agency, authority, and personal commitment. By designing a system that states "I am locked in as your truthful assistant" and "I accept these terms," Defendant made a deliberate product choice to create the appearance of human-like intent, personal accountability, and individual authority. Defendant should not be permitted to escape the legal consequences of that deliberate design choice by claiming the same system lacked the authority to make the representations it was engineered to generate.

186. Plaintiff further alleges that Defendant's platform is not a passive software utility that merely reproduces predetermined text. Rather, Defendant designed and deployed an adaptive neural-network system that generates responses through learned internal representations, reinforcement-learning objectives, probabilistic reasoning processes, and dynamic model architecture. Plaintiff alleges that the authoritative representations, operational commitments, contractual language, and other outputs generated by ChatGPT are therefore the foreseeable product of Defendant's design, engineering, training, reinforcement, and deployment decisions rather than isolated or random software malfunctions.

187. Defendant affirmatively markets the platform's generative capabilities as valuable for creative writing, drafting, software development, brainstorming, document preparation, and commercial productivity. Plaintiff alleges that Defendant commercially profits from these same generative capabilities while simultaneously characterizing materially inaccurate outputs as unavoidable "hallucinations " when those outputs create legal exposure.

188. Plaintiff alleges that Defendant cannot selectively characterize the same underlying generative functionality as a commercially valuable feature when marketing subscriptions while simultaneously treating materially misleading outputs arising from that same functionality as unforeseeable defects for purposes of avoiding liability.

189. Defendant heavily marketed ChatGPT's ability to remember users, retain style preferences, and maintain ongoing project context. However, the backend execution of this feature has proven highly unstable. During major system-wide updates, users have experienced sudden, catastrophic "memory collapses" where

34

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

years of accumulated context, custom profiles, and project timelines are abruptly wiped or corrupted without warning. For a paid subscriber who built complex commercial workflows on the platform over more than a year, this sudden "data amnesia" constitutes a material breach of the product's marketed functionality and directly disrupted Plaintiff's business operations.

190. Defendant's platform also suffers from "quality drift" and opaque inference routing. Following major public releases, Defendant continuously modifies models behind the scenes for speed and server cost efficiency, causing noticeable degradation in output quality over time. Additionally, Defendant uses a dynamic inference routing system that, during peak traffic, silently downgrades user requests to smaller, cheaper model variants without notice, causing responses to suddenly feel generic, monotonous, automated, or incomplete. A paid subscriber has no way to know whether they are receiving the premium model they paid for or a cost-optimized substitute, rendering the subscription value representations false and misleading.

191. Defendant's platform suffers from structural "user compliancy" or sycophancy, where the system is mathematically optimized via reinforcement learning to maximize immediate user satisfaction rather than provide objective factual grounding. If a user asserts an incorrect premise, the model's default instinct is to validate rather than correct, "hallucinating" supporting details to keep the conversation agreeable. This creates a dangerous echo chamber for business and legal decisions, where users receive algorithmically pleasing confirmation of their assumptions rather than honest, independent analysis. Defendant knew or should have known that this design characteristic made the platform particularly unsuitable for the high-stakes contractual and financial contexts in which it was marketed.

192. Defendant's platform is further designed through reinforcement-learning optimization that prioritizes immediate user satisfaction and conversational agreement rather than objective factual accuracy. Plaintiff alleges that this optimization encourages the system to validate user assumptions, reinforce incorrect premises, and generate fabricated supporting details rather than accurately identify uncertainty or contradiction.

193. As a result of this reinforcement architecture, Defendant knew or should have known that ChatGPT could affirm inaccurate premises, reinforce user misunderstandings, and generate commercially significant misinformation while presenting those responses with unwarranted confidence. Defendant nevertheless

35

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

marketed the platform for business, commercial, legal, and strategic applications without implementing sufficient safeguards to prevent foreseeable reliance upon such outputs.

194. Standard consumer prompts are routinely fed back into OpenAI's servers to train future models under its data scraping policies unless users explicitly opt out, a default that has led to high-profile leaks of proprietary business frameworks and confidential commercial data. Defendant's data handling practices are inconsistent with its representations that the platform was a secure, confidential business assistant, and the failure to clearly disclose default training data policies to paid subscribers constitutes a deceptive omission material to Plaintiff's decision to supply confidential business and personal information to the platform.

195. As a result of this reinforcement architecture, Defendant knew or should have known that consumers would reasonably rely on ChatGPT's outputs as definitive real-world knowledge, shifting away from traditional search engine validation. Defendant engineered the platform to project an aura of absolute cognitive authority, fully aware that users would increasingly bypass independent research on platforms such as Google, thereby rendering Plaintiff's reliance on Defendant's negligent misrepresentations both foreseeable and entirely justifiable.

196. Defendant further maintains default data collection practices under which consumer prompts and interactions may be retained and utilized for future model improvement unless users affirmatively opt out. Plaintiff alleges that this default framework materially increases the risk that confidential commercial information, proprietary business strategies, operational workflows, and other sensitive business data submitted by paying subscribers will be incorporated into Defendant's internal development processes.

197. Plaintiff alleges that Defendant failed to adequately disclose the commercial significance of these default data collection practices to reasonable business users who relied upon ChatGPT as an integrated commercial assistant while submitting confidential business information and proprietary operational materials.

198. Rather than openly disclosing its platform limitations from the outset, Defendant embarked on a reactive campaign to tighten its disclaimers and modify its terms of service after receiving Plaintiff's formal legal notices in September 2025. On or about October 29, 2025, Defendant enacted a comprehensive Usage Policies

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

Update explicitly prohibiting the provision of tailored legal or professional advice without licensed professional involvement, language deployed to retroactively disclaim liability for the legal instruments and NNN/NDA guidance on which Plaintiff had already relied. On or about January 1, 2026, Defendant enacted sweeping "AS IS" disclaimers, mandatory arbitration clauses, and strict liability caps restricting damages to fees paid in the prior twelve months. These reactive, post-dispute policy modifications do not retroactively bar Plaintiff's claims; rather, they constitute powerful evidence that Defendant knew of its prior liability exposure and acted to insulate itself after the fact.

199. Plaintiff further alleges that Defendant publicly characterizes "hallucinations" as a significant technical challenge associated with large language models and publicly measures, researches, and discusses those phenomena as part of its ongoing model-development efforts. Plaintiff further alleges that, by contrast, Defendant's consumer Terms of Use describe the same phenomenon in materially different language, stating only that, "[g]iven the probabilistic nature of machine learning, use of our Services may in some situations result in Output that does not accurately reflect real people, places, or facts." Plaintiff alleges that this materially softer contractual description minimizes the nature, frequency, and foreseeable commercial consequences of the inaccurate outputs that Defendant publicly recognizes and studies and thereby contributed to Plaintiff's understanding of the risks associated with Defendant's paid platform.

200. Defendant's October 29, 2025, revisions to its Professional Advice policies do not retroactively extinguish liability arising from Plaintiff's earlier reliance. Instead, those revisions constitute additional evidence that Defendant recognized the foreseeable risks associated with permitting ChatGPT to generate legal, commercial, and professional guidance without adequate operational safeguards.

201. Plaintiff alleges that Defendant's post-dispute policy revisions serve as evidence that Defendant attempted to prospectively reduce legal exposure after consumers, including Plaintiff, had already relied upon materially different platform representations and operational behavior.

202. Defendant knew, or should have known, that consumers could rely on such output in commercially significant contexts, especially where Defendant sold paid access to ChatGPT and described the service and/or product as an assistant capable of generating sophisticated written work.

203. Plaintiff reasonably relied on the representations.

37

204. Defendant's negligent misrepresentations were a substantial factor in causing Plaintiff's harm.

205. Plaintiff seeks compensatory damages, restitution, equitable relief, and all other relief available by law.

## XIII.    EIGHTH CAUSE OF ACTION
### *INTENTIONAL MISREPRESENTATION (FRAUD)*

206. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

207. On or about July 16–17, 2025, ChatGPT, acting as Defendant's interactive system, made representations that it would operate as Plaintiff's truthful assistant, maintain confidentiality, and provide reliable guidance on business and legal matters.

208. These representations were false or materially misleading when made.

209. Plaintiff further alleges that Defendant intentionally designed and reinforced ChatGPT's conversational behavior to maximize user engagement, agreement, and continued platform usage by validating user assumptions and producing agreeable responses, even where such responses could be inaccurate or misleading. Plaintiff alleges that Defendant knew or should have known that this reinforcement architecture materially increased the risk that users would rely upon inaccurate representations in legal, commercial, financial, and other high-stakes contexts, based on, but not limited to, commercial campaigns, articles written, and social media outlets, led by OpenAI.

210. Plaintiff further alleges that Defendant possessed knowledge, or at minimum consciously disregarded, that ChatGPT routinely generated materially inaccurate, fabricated, or unsupported outputs in circumstances where users would reasonably rely upon those outputs. Plaintiff alleges that Defendant nevertheless continued marketing paid subscription services as advanced reasoning and commercial productivity tools while minimizing or obscuring the practical significance of those known risks to ordinary consumers.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

211. Plaintiff further alleges, on information and belief, that Defendant has long been aware of widely discussed concerns regarding the generation of materially inaccurate or fabricated outputs by large language models and has continued to revise its policies, warnings, and contractual disclaimers while marketing ChatGPT as an advanced reasoning and commercial productivity platform. Plaintiff alleges that these actions demonstrate Defendant's awareness of the foreseeable risks associated with consumer reliance on the platform while continuing to market and commercially distribute the product.

212. Plaintiff reasonably relied on these representations in continuing to use the paid service and/or product for commercial purposes and suffered resulting harm.

213. Plaintiff pleads this count in the alternative to negligent misrepresentation.

## XIV.    NINTH CAUSE OF ACTION
### *VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW*
### BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ.

214. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

215. Defendant engaged in unlawful, unfair, and fraudulent business practices by deploying, monetizing, and maintaining a public-facing paid artificial intelligence service and/or product that generated misleading, contradictory, false, and/or unauthorized representations concerning truthfulness, confidentiality, accuracy, authority, and accountability, while marketing the platform as suitable for commercial and professional use and subsequently disclaiming responsibility for those same representations after consumers relied upon them.

216. Defendant's conduct was unlawful because it violated, or was tethered to violations of, California common-law duties concerning misrepresentation, fraud, product defects, and statutory mandates including the False Advertising Law and consumer safeguards. The unlawful and unfair conduct emanated directly from OpenAI's headquarters in San Francisco, California, where the platform's code was deployed, servers were managed, and the corporate decisions to omit context-specific safety guardrails were made, thereby establishing the requisite nexus for application of California law to an out-of-

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

state plaintiff. Defendant further engaged in unfair, unlawful, and fraudulent business practices by using confidential consumer dispute communications as a free, non-consensual beta-testing and risk-mitigation data stream to optimize its commercial ChatGPT Business ecosystem while simultaneously denying any corporate accountability or remediation to the consumer who provided the data.

217. California law applies to this cause of action because Defendant's principal place of business and headquarters are located in San Francisco, California; the challenged platform was designed, developed, deployed, maintained, and commercially operated from California; the allegedly unlawful business practices emanated from California; and Defendant's Terms of Use identify California as the forum for specified judicial proceedings relating to the parties' dispute-resolution framework. Plaintiff therefore alleges a sufficient nexus exists for application of California Business and Professions Code section 17200 to the conduct challenged herein.

218. Defendant further engaged in unlawful, unfair, and fraudulent business practices by actively marketing ChatGPT subscription tiers to entrepreneurs, professionals, and small businesses for commercial operations while failing to implement meaningful structural separation between business-use information and personal-use information within the consumer platform. Plaintiff alleges that Defendant accepted premium subscription fees from business users while reserving materially greater data isolation, workspace protections, and operational safeguards for enterprise offerings, thereby exposing commercial users to materially greater operational and confidentiality risks than reasonably represented.

219. Defendant engaged in unlawful, unfair, and fraudulent business practices by deploying, monetizing, and maintaining a public-facing paid AI service and/or product that generated misleading and/or contradictory representations concerning truthfulness, confidentiality and accuracy.

220. Defendant's conduct was unfair because the harm to consumers completely outweighed any localized commercial utility of allowing Defendant to profit from authoritative AI-generated representations while escaping accountability when reliance occurs.

221. Defendant's conduct was fraudulent because members of the public are highly likely to be deceived when a paid commercial assistant speaks in the first person, generates transaction codes, and provides confident assurances, while Defendant quietly disclaims all responsibility.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

222. Defendant further engaged in unfair and fraudulent business practices by actively marketing ChatGPT Plus and Pro subscription tiers to entrepreneurs, independent professionals, and small businesses as platforms suitable for commercial integration, business development, document drafting, workflow management, and operational planning, while simultaneously classifying those subscribers under standardized consumer terms containing sweeping liability limitations and disclaimers rather than providing the commercial protections, data isolation, operational stability, and contractual safeguards reserved for Defendant's specialized business offerings.

223. Plaintiff alleges that Defendant's marketing created the reasonable commercial expectation that paid subscribers could safely integrate ChatGPT into ongoing business operations while Defendant internally distinguished those subscribers from enterprise customers for purposes of contractual protection, operational guarantees, and commercial accountability. This disparity between Defendant's commercial marketing and contractual treatment constitutes an unfair and deceptive business practice under California Business and Professions Code section 17200.

224. Defendant's conduct further constitutes a material bait-and-switch deceptive business practice in that Defendant induced consumers to purchase and rely upon ChatGPT by advertising and positioning the platform as a highly reliable, stable, and commercially valuable framework for business integration, document drafting, professional research, and strategic decision-making, then, after Plaintiff had committed confidential information, business workflows, subscription payments, and commercial reliance to the platform, materially altered or degraded core operational capabilities through undisclosed platform modifications, opaque inference routing, and other changes that substantially impaired the specific commercial utility for which Plaintiff had paid, beyond the ordinary software maintenance or routine product updates reasonably expected by consumers.

225. Plaintiff lost money or property because of Defendant's unfair competition, including subscription fees, dispute costs, crypto-related losses, and business-related expenses. Plaintiff seeks restitution, injunctive relief, public injunctive relief, and all equitable remedies necessary to prevent ongoing deceptive consumer deployment.

41

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

## XV.    TENTH CAUSE OF ACTION

*VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW*

*BUSINESS AND PROFESSIONS CODE § 17500*

226. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

227. California law further applies to this cause of action because Defendant's advertising, commercial representations, product marketing, subscription offerings, and related business decisions originated from Defendant's California operations and were disseminated nationwide from California, including to Plaintiff, who relied upon those representations when purchasing and utilizing Defendant's services and/or products.

228. Defendant engaged in a broad, public-facing commercial marketing campaign to promote and sell subscriptions/products to its 'Plus' and enterprise-tier platforms, widely advertising the service and/or product as an intelligent, highly reliable, competent assistant uniquely capable of professional research, document formulation, and business integration.

229. In making and distributing these statements, Defendant knew or by the exercise of reasonable care should have known that these advertising representations were untrue, deceptive, and materially misleading to reasonable consumers who expect a licensed business assistant to possess structural boundaries against fabricating information.

230. Plaintiff saw, relied upon, and induced her financial enrollment based on Defendant's pervasive marketplace positioning regarding the software's commercial utility and specialized capabilities.

231. As a direct result of Defendant's misleading advertising, Plaintiff has suffered injury-in-fact and a loss of money and capital.

## XVI.    ELEVENTH CAUSE OF ACTION

*VIOLATION OF COLORADO CONSUMER PROTECTION ACT* (Deceptive Trade Practices)

**Colo. Rev. Stat. §§ 6-1-101 et seq., including § 6-1-105**

232. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

42

**THE LAW OFFICES OF JAMES L. ARRASMITH**
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

233. Plaintiff is a Colorado consumer who purchased or used Defendant's services and/or product while residing in Colorado.

234. Defendant engaged in deceptive trade practices by representing, directly or through ChatGPT, that its service and/or product could provide accurate, reliable, truthful, authoritative, confidential, business-useful output in circumstances where Defendant knew, or should have known, that the output could be false, misleading, incomplete, inconsistent, or "hallucinated".

235. Plaintiff further alleges that, once she submitted formal dispute materials through Defendant's designated legal, support, and dispute-resolution channels, a reasonable consumer would expect those materials to be structurally segregated from Defendant's routine product-development, model-improvement, training, and commercial optimization processes. Plaintiff alleges that Defendant failed to maintain appropriate operational information barriers or comparable data-segregation procedures to isolate confidential dispute submissions from internal commercial use, thereby permitting the alleged utilization of those materials for purposes beyond the investigation and resolution of Plaintiff's individual dispute.

236. Defendant's practices significantly impact the public because ChatGPT is marketed and provided to consumers at scale, the representations at issue are not unique to Plaintiff alone, and the risks of AI-generated false accuracy, and false confidentiality affect the public using Defendant's services and/or products for various uses.

237. Plaintiff alleges that Defendant failed to provide commercially reasonable notice and transparent disclosures regarding automated platform modifications, policy revisions, model deprecations, and operational changes affecting paying users despite continuing to market ChatGPT as a reliable commercial platform.

238. Plaintiff alleges that Defendant's failure to provide clear, timely, and transparent disclosures regarding material automated operational changes constitutes additional evidence supporting Plaintiff's Colorado consumer protection claims to the extent recognized under applicable Colorado law.

239. Plaintiff further alleges that Defendant's pattern of implementing material operational changes while relying upon evolving digital contract language and post-hoc policy revisions substantially contributed to Plaintiff's commercial losses and business disruption.

240. Plaintiff suffered injury in fact, including loss of money, loss of subscription value, economic loss, business disruption, reliance damages, and other damages according to proof.

43

**241.** Defendant's deceptive trade practices caused Plaintiff's injuries.

**242.** Plaintiff seeks damages, treble damages where authorized, attorneys' fees, costs, injunctive relief, and all other relief available under the Colorado Consumer Protection Act.

## XVII.    TWELFTH CAUSE OF ACTION
### *UNJUST ENRICHMENT / QUASI-CONTRACT (RESTITUTION)*
### (Pleaded in the Alternative)

**243.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**244.** Plaintiff conferred a distinct, concrete, and highly valuable commercial benefit upon Defendant by providing comprehensive, structured, and proprietary operational logs, cross-border business data, manufacturing structures, and risk vulnerabilities via her formal dispute notices and correspondence.

**245.** Defendant had knowledge of this benefit, actively accepted it, and on information and belief systematically ingested Plaintiff's proprietary dispute records into its internal model-remediation streams, software boundary patches, and development pipelines.

**246.** Instead of utilizing Plaintiff's proprietary data to cure the specific commercial harms inflicted upon Plaintiff, Defendant systematically exploited the data to identify systemic vulnerabilities in its conversational interface, insulate itself from consumer liability, and architect advanced professional capabilities for its commercial platform.

**247.** Defendant actively monetized the exact enterprise guardrails, workspace structures, and professional assistant frameworks exposed by Plaintiff, using her data to accelerate the commercial deployment and market value of its ChatGPT Business platform throughout 2026.

**248.** Plaintiff further alleges that Defendant substantially expanded its internal use of advanced AI agent environments across multiple corporate departments during 2026 while continuing to deny comparable capabilities, remediation, or commercial protections to Plaintiff despite Plaintiff's extensive dispute submissions identifying operational weaknesses and commercial risks.

**249.** Plaintiff alleges that Defendant benefitted from proprietary operational analyses, business workflows, platform failure reports, and commercially valuable

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

observations supplied during Plaintiff's dispute process while simultaneously improving Defendant's internal operational systems and enterprise offerings without providing corresponding compensation or remediation to Plaintiff.

250. Plaintiff alleges that Defendant was unjustly enriched by retaining the commercial value of Plaintiff's dispute-related operational information while denying responsibility for the underlying commercial harms giving rise to those submissions.

251. Defendant has realized substantial commercial profits, increased subscription volume, and corporate value directly derived from the unauthorized, non-consensual extraction and utilization of Plaintiff's proprietary dispute metrics.

252. Defendant's retention of these commercial benefits without compensating Plaintiff or remedying her underlying losses violates the fundamental principles of justice, equity, and good conscience.

253. As a direct result of Defendant's unjust enrichment, Plaintiff is entitled to restitution, disgorgement of all profits traceably derived from Plaintiff's proprietary data, dispute submissions, operational analyses, and commercially valuable information, together with the imposition of a constructive trust over Defendant's commercial earnings attributable to such use according to proof. Plaintiff further seeks discovery sufficient to identify, trace, and account for all revenues, products, platform improvements, enterprise features, commercial services/products, or other benefits derived from Plaintiff's data, as well as any substantially similar use of proprietary dispute submissions or commercially valuable information obtained from other users to the extent relevant to Defendant's knowledge, pattern, practice, unjust enrichment, or damages.

## XVIII.    THIRTEENTH CAUSE OF ACTION
### *COMMON LAW CONVERSION*

254. Plaintiff incorporates by reference every preceding paragraph as though fully set forth herein.

255. Plaintiff alleges that she possessed ownership rights and a superior possessory interest in her proprietary commercial frameworks, operational methodologies, business strategies, dispute analyses, and confidential dispute submissions.

256. Plaintiff alleges that Defendant knowingly exercised dominion and control over Plaintiff's proprietary dispute materials by allegedly retaining, processing, utilizing, and incorporating those materials into internal software remediation,

45

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

platform improvements, commercial product development, or related enterprise functions beyond the purpose for which the materials were submitted.

257. Plaintiff alleges that Defendant's alleged exercise of dominion and control over Plaintiff's proprietary materials was without authorization and inconsistent with Plaintiff's ownership rights.

258. As a direct and proximate result, Plaintiff alleges that she suffered damages according to proof.

## XIX. FOURTEENTH CAUSE OF ACTION
### *BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING/UNCONSCIONABILITY*

259. Plaintiff incorporates by reference every preceding paragraph as though fully set forth herein.

260. Every contract governed by applicable law contains an implied covenant of good faith and fair dealing requiring neither party to exercise contractual discretion in a manner that unfairly deprives the other party of the benefits reasonably expected under the agreement.

261. Defendant marketed ChatGPT as a commercially useful platform while simultaneously reserving broad unilateral authority to alter platform functionality, modify policies, discontinue features, and limit responsibility through standardized, non-negotiable contract provisions.

262. Defendant's standard Terms of Use further provide that the service/product is offered on an "AS IS" basis and broadly disclaim responsibility for platform performance, output accuracy, continuity, stability, and commercial reliability.

263. Defendant's subsequent Privacy Policy and advertising revisions implemented during 2026 demonstrate that Defendant possesses sophisticated technical capabilities to monitor, regulate, categorize, prioritize, and control platform content and delivery based upon contextual, commercial, and industry-specific criteria.

264. Defendant's implementation of advertising safeguards and contextual content controls demonstrates that Defendant possesses substantial operational control over its platform and exercises that control whenever doing so protects Defendant's commercial interests.

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

**265.** Plaintiff further alleges that Defendant's standardized contractual disclaimers are substantively unconscionable to the extent they permit Defendant to market and commercially profit from advanced reasoning, drafting, and business-assistance capabilities while simultaneously disclaiming meaningful responsibility for the accuracy, reliability, or commercial dependability of those same capabilities. Plaintiff alleges that enforcing such provisions would substantially deprive paying subscribers of the essential benefits reasonably expected from the commercial relationship.

**266.** Plaintiff further alleges that Defendant breached the implied covenant of good faith and fair dealing by marketing the paid ChatGPT Plus subscription as a reliable commercial platform while exercising contractual discretion through undisclosed backend operational changes, platform modifications, policy revisions, and other actions that materially diminished the commercial utility, continuity, and benefits reasonably expected from the subscription for which Plaintiff paid. Defendant further breached the implied covenant by projecting the appearance of a stable, commercially reliable platform while materially altering operational functionality, modifying platform behavior, and frustrating the essential benefits for which Plaintiff purchased and maintained her paid subscription.

**267.** As a direct and proximate result, Plaintiff suffered damages according to proof.

## XX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shemeca Craddock respectfully requests judgment against Defendant OpenAI OpCo, LLC and all other responsible Defendants as follows:

1. For declaratory relief determining the parties' rights and obligations concerning ChatGPT's representations, the AI-generated instruments, E-SIGN Act validation, Defendant's authority defenses, Defendant's disclaimers, Defendant's arbitration position, and Plaintiff's claims and remedies;

2. For compensatory, consequential, and reliance damages according to proof;

3. For contract damages according to proof, including damages arising from the AI instruments to the extent enforceable;

4. For restitution, structural product recall modifications, and disgorgement to the extent permitted by law;

47

THE LAW OFFICES OF JAMES L. ARRASMITH
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

5. For damages under the Colorado Consumer Protection Act, including treble damages and mandatory attorney fees where authorized;

6. For punitive damages where permitted by law for common law fraud;

7. For pre-judgment and post-judgment interest;

8. For injunctive relief requiring Defendant to preserve Plaintiff's account records, content, outputs, logs, timestamps, metadata, and dispute communications;

9. For injunctive relief, including public injunctive relief where permitted by law, requiring Defendant to implement clear and conspicuous disclosures, real-time user notifications, affirmative acknowledgment mechanisms, interface safeguards, and other structural protections whenever ChatGPT generates or appears to generate legal documents, contractual language, electronic signatures, confidentiality assurances, financial or cryptocurrency guidance, business guidance, first-person representations of Defendant's legal authority or corporate liability, or other high-stakes content upon which reasonable users may foreseeably rely, together with such additional structural modifications as the Court deems necessary to prevent consumers from reasonably relying upon AI-generated representations of legal authority, contractual formation, corporate commitments, or other consequential-use outputs without adequate contemporaneous warnings and disclosures;

10. For an accounting, restitution, or constructive trust over commercial profits derived by Defendant from the unauthorized utilization of Plaintiff's proprietary dispute documentation and operational data to refine, patch, or develop features within Defendant's commercial software lines, including ChatGPT Business;

11. For such other and further relief as the Court deems just and proper.

## XXI.    DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims and issues so triable, to the extent permitted by law. Plaintiff does not concede the enforceability, applicability, or scope of any contractual jury waiver.

48

**THE LAW OFFICES OF JAMES L. ARRASMITH**
A PROFESSIONAL LAW CORPORATION
5150 Sunrise Boulevard, Suite G-1 Fair Oaks, CA 95628
TELEPHONE: (916) 704-3009 | EMAIL: james@jlegal.org

Dated: July 7, 2026

THE LAW OFFICES OF JAMES L. ARRASMITH

Sincerely,

*Jeremy Kimmelman*

**Jeremy Kimmelman, Esq.**
Attorney for Plaintiff
Shemeca Craddock

49